**William H. FREEMAN, Plaintiff–Appellee, Cross–Appellant,**

v.

**CONTINENTAL INSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.**

No. 92–8316.

United States Court of Appeals, Eleventh Circuit.

July 30, 1993.

James M. Poe, Mari L. Myer, Atlanta, GA, for defendant-appellant, cross-appellee.

Robert A. Falanga, Jesse E. Barrow, III, Falanga, Barrow & Chalker, Atlanta, GA, for plaintiff-appellee, cross-appellant.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

William Freeman brought this lawsuit against Continental Insurance Company (Continental) asserting a statutory cause of action under 29 U.S.C. § 1001 *et seq.* (ERISA). He sought $250,000 in disability insurance benefits, claiming that he is permanently and totally disabled because of an automobile accident. Continental had issued a policy that provided disability insurance to Freeman as an employee of Eastern Airlines (Eastern).

The case was tried before the district judge. The court ruled in favor of Freeman and against Continental, awarding $250,000. Continental appeals. Freeman cross-appeals the district court's orders denying his request for attorney's fees under ERISA and assessing sanctions under Federal Rule of Civil Procedure 11. We affirm.

## I. FACTS

On January 28, 1985, while Freeman was employed by Eastern Airlines, he was involved in a car accident. He later claimed to be disabled as a result of this accident. Continental denied liability under its policy. The insurance policy at issue covers only "loss resulting directly and independently of all other causes from bodily injuries caused by the accident while this policy is in force...." (R.3–67 at 7.). In addition, the policy only insures against disability that commences within 180 days from the date of the accident. (*Id.*).

### A. Freeman's Employment Following the Accident

The evidence at trial was that Freeman returned to work about a month after the accident. He experienced difficulty with remembering, thinking and completing the arithmetic he used to perform his job as a customer services agent. His co-workers and supervisor noticed his difficulties and began to assist him with his duties. Gene Albritton, Freeman's supervisor, helped to keep Freeman's problems a secret.

Freeman continued to work at Eastern until late July of 1985. He went to a weights and balances training course, where he had great difficulty in understanding and following the course materials and the instructor's directions. The instructor noticed Freeman's problems and sent him home before the end of the course. Freeman called in sick on July 31, 1985 and did not return to work at Eastern.

### B. The Pre–Accident Symptoms

In 1979, six years prior to the accident, Freeman was examined by Dr. Preedy, a specialist in internal medicine. Freeman explained to Dr. Preedy that he was suffering from disorientation, tiredness, sleeping difficulty, vision problems, problem-solving difficulties, nervous feelings and depression. Dr. Preedy concluded that these symptoms were psychosomatic.

The symptoms eventually resolved without treatment; in June of 1979, Freeman told Dr. Preedy he was better. In his deposition, Dr. Preedy explained that psychosomatic complaints reappear regularly, particularly during periods of high stress. Dr. Preedy added that he has not seen Freeman since 1979 and could offer no opinion regarding the effect of his automobile accident in 1985.

### C. Dr. Koenig, The Neurologist

Dr. Koenig, a neurologist, treated Freeman at the hospital immediately following the accident and continued to treat him for approximately two years. Dr. Koenig concluded that Freeman had suffered a concussion, trauma to the head. Dr. Koenig performed several tests including CAT scans and an EEG. None of the tests revealed that Freeman suffered brain damage. Dr. Koenig diagnosed Freeman's disability as post-concussion syndrome.

At Dr. Koenig's request, Freeman took the Minnesota Multiphasic Personality Inventory [MMPI]. The MMPI indicated that Freeman had longstanding hypochondriacal tendencies.

During his treatment of Freeman, Dr. Koenig referred him to Dr. Shehee, a psychiatrist. Dr. Koenig testified that the reason for the referral to Dr. Shehee was that Freeman was having some psychiatric problems. His referral did not necessarily indicate that he had ruled out the possibility of brain damage. In fact, he explained that "based upon [Freeman's] complaints [brain injury was] certainly . . . a possibility, and that's why I had sent him to other individuals to get better documentation of that." (Koenig Deposition at 36.).

Before Dr. Koenig knew about Dr. Preedy's examination of Freeman, Dr. Koenig had opined that no pre-existing conditions contributed to Freeman's disability. After he became aware that Freeman's medical history included the symptoms he had described to Dr. Preedy, however, Dr. Koenig stated, "Certainly, the fact he demonstrated he had those complaints shows the potential for a pre-existing condition, but there was a gap of six years. I. can only assume. I can't say with a medical certainty as to what role they played." (*Id.* at 39–40; R.3–67 at 6.)

#### D. *Dr. Shehee, the Psychiatrist*

Dr. Shehee agreed with Dr. Koenig that Freeman suffers from post-concussion syndrome or organic brain disease resulting from the accident. He testified with clarity that he believed the accident to be the sole cause of injury. He did not perform any tests on Freeman to establish the existence of brain damage. Dr. Shehee discounted the use of a CAT scan or the MMPI to diagnose Freeman's disability. He testified that the only way to be certain of Freeman's brain damage would be to bore a hole in his skull

to examine his brain, a procedure he did not recommend for Freeman.

At the time of his deposition, Dr. Shehee was familiar with Dr. Preedy's treatment of Freeman. He explained that he believed there to be no connection between Freeman's earlier psychosomatic symptoms and his current disability. Dr. Preedy had testified that the symptoms were likely to recur. Dr. Shehee opined that these symptoms, if not totally resolved, would have reappeared during the six years preceding the automobile accident. There was no evidence that these symptoms recurred during that time period.

## II. ISSUES ON APPEAL

Both parties agree that Freeman is permanently and totally disabled. Continental, however, contends that the district court erred in concluding, first, that Freeman suffered a disabling bodily injury in the automobile accident of January 28, 1985 and, second, that Freeman's disability was caused by the automobile accident "directly and independently of all other causes." We review the district court's factual findings for clear error only. Fed.R.Civ.P. 52; *Newell v. Prudential Insurance Co.,* 904 F.2d 644, 649 (11th Cir. 1990).

In the cross-appeal, Freeman asserts error in the district court's denial of his petition for attorney's fees. We review the district court's order denying fees for abuse of discretion.[1] *Dixon v. Seafarers' Welfare Plan,* 878 F.2d 1411 (11th Cir.1989).

## III. DISCUSSION

A. *Sufficiency of the Evidence of Disability Resulting From Bodily Injury and Caused Directly and Independently by the Accident*

▬ In awarding disability benefits to Freeman, the district court found that Free-

---

1. Freeman also contends that the district court erroneously imposed sanctions against his attorneys under Federal Rule of Civil Procedure 11 for their failure to make a reasonable inquiry

into the facts and law before filing a motion to disqualify one of Continental's attorneys. We find no reversible error in the district court's imposition of Rule 11 sanctions.

man's disability was caused by a bodily injury and resulted directly from the accident and independently of all other causes. These findings are not clearly erroneous. The record contains substantial evidence supporting the factual determinations made by the district court as to both the injury and its cause.

### B. Denial of Freeman's Motion for Attorney's Fees

 Freeman claims that the district court erred in denying his motion for attorney's fees under 29 U.S.C. § 1132(g)(1). We find no abuse of discretion in the court's denial of fees.

The applicable statute provides:

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). Unlike other fee-shifting provisions, which give the court discretion to award fees to a prevailing party, § 1132(g)(1) allows a court to award fees to either party. *Dixon*, 878 F.2d at 1412. The law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action. *Id.*

 Our cases have enumerated five factors for the district court to consider when deciding a motion for attorney's fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) the relative merits of the parties' positions. *McKnight v. Southern Life And Health Ins. Co.*, 758 F.2d 1566

(11th Cir.1985) (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980)).[2] We have recognized that "[no] one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address.... In particular types of cases, or in any individual case, however, other considerations may be relevant as well." *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co., Inc.*, 932 F.2d 1443, 1452 (11th Cir.1991) (quoting *Iron Workers*, 624 F.2d at 1266). We have noted that it is helpful for district courts to refer specifically to each of the *Iron Workers* factors in their analysis. *Id.* The district court here not only laid out the five factors but also discussed the court's findings in regard to each of these factors.

The district court set out its analysis as follows:

> In this case, an award of attorneys' fees would not be appropriate. First, the court finds no bad faith on the part of defendant. Plaintiff strenuously argues that Continental's handling of his claim indicates its lack of good faith; however, as demonstrated through the course of this lawsuit, Continental arguably had valid grounds on which to deny his claim for disability insurance benefits. Second, no evidence has been submitted regarding Continental's ability to satisfy an award of attorneys' fees. Third, in light of valid legal arguments that were available to defendant Continental in this case, it is unlikely that an award of attorneys' fees would deter other insurance companies involved in similar disputes over disability benefits. Fourth, there is no evidence that other beneficiaries of an ERISA plan would be benefited by an award of attorneys' fees, nor does this case involve a significant legal issue regarding ERISA. Fifth and last, although the court found in favor of the plaintiff on defendant's motion for summary judgment and after a nonjury

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

trial, defendant's legal arguments had substantial merit. Difficult issues existed regarding whether plaintiff met the 180–day time limit and whether plaintiff's injury was caused solely by the accident as required by the policy. Based on the foregoing, the court will deny plaintiff's request for attorneys' fees.

(R.3–79 at 6–7.)

Freeman argues that (1) Continental acted in bad faith; (2) Continental is able to pay fees;[3] (3) the district court's opinion deters insurers from denying claims without a strong case and clarifies the application of the policy's 180–day time limit for onset of liability; (4) plan beneficiaries will benefit from insurers denying fewer claims;[4] (5) Continental's arguments lack merit.

Freeman's contention as to the first and fifth *Iron Workers* factors is basically that Continental's arguments are without merit. The fact that Freeman ultimately prevailed, however, does not mean Continental's arguments were insupportable or made in bad faith. Our decision in *Dixon* provides guidance on this point. In *Dixon*, the administrator of an ERISA plan denied the claimant death benefits because the employee had committed suicide. The district court found that the denial was arbitrary and capricious and that the plan contained no exclusion for suicide, but the court found no bad faith on the part of the administrator and denied the claimant's request for attorney's fees. *Dixon*, 878 F.2d at 1412. Even though the claimant was successful on the merits of the underlying action, we affirmed the district court's denial of fees and its finding that the insurer had not acted in bad faith. *Id.*

In this case, the district court explained that the plausibility of Continental's grounds for denying the disability claim indicates that Continental acted without bad faith. Continental's theory that a pre-existing condition contributed to Freeman's difficulties was ar-

guable because Freeman experienced earlier similar symptoms, which Dr. Preedy diagnosed as psychosomatic, and because Dr. Koenig was unaware of this part of Freeman's medical history while he was treating Freeman. In Dr. Koenig's deposition, he admitted that Dr. Preedy's earlier diagnosis would alter the degree of certainty with which he could say the disability had no other cause than the accident.

In addition, Continental's position as to the time of onset of Freeman's disability was not without supporting evidence. Freeman had returned to work a month after the accident and remained actively employed by Eastern for a total of 183 days after the accident. Thus, the record supports the court's conclusion that Continental did not act in bad faith because Continental had arguably valid grounds for denying the claim.

Regarding the third and fourth *Iron Workers* factors, which concern the deterrent effect of the suit and the benefit to other ERISA plan beneficiaries, Freeman argues that an award of fees in this case would benefit other plan participants by deterring insurers from "challeng[ing] benefits without a strong case." (Brief of Appellee/Cross Appellant at 47.). The district court, however, found no evidence that an award of fees would benefit other beneficiaries of an ERISA plan. We agree.

The disputed issues involved in this case were unique to Freeman's disability. He suffers from a cognitive dysfunction, which could be masked for months with the help of co-employees, would not be revealed in the objective tests performed by one of his doctors, and would resemble earlier psychosomatic disorders he had suffered prior to the automobile accident.

In support of Freeman's contention that his lawsuit benefitted other plan beneficiaries, he argues that the suit resolved a contract interpretation question regarding the

---

**3.** The district court noted that the parties have presented no evidence as to Continental's ability to pay Freeman's attorney's fees.

**4.** Freeman does not dispute the district court's finding that the case involves no significant ERISA issues.

application of the policy's 180–day time limit for onset of disability. The district court's decision on this issue, that the date of onset of Freeman's disability was the date of the accident, made clear that the policy did not prevent disability claimants who temporarily return to work from obtaining benefits under certain circumstances. Nonetheless, the court's interpretation of the policy language would not necessarily benefit other insured claimants. The district court based its decision regarding the onset of Freeman's disability on the evidence addressing Freeman's unique medical and employment history. Any benefit flowing from this lawsuit to other beneficiaries of this plan or other ERISA plans is merely speculative.

In sum, § 1132(g)(1) "does not award fees to the prevailing party outright, but rather, allows for attorney's fees for either party in accordance with the district court's discretion." *McKnight,* 758 F.2d at 1572. The district court did not abuse its discretion in denying Freeman's motion for attorney's fees. The court clearly set out its reasons for the decision, all of which have substantial support in the record.

## IV. CONCLUSION

Finding no error in the district court's rulings challenged on appeal or cross-appeal, we affirm.

AFFIRMED.