**Carrie RICE, Plaintiff,**

v.

**The ROCHESTER LABORERS' ANNUI-TY FUND, Robert Brown and Shirley J. Jenkins, Defendants.**

**No. 94–CV–6262L.**

United States District Court, W.D. New York.

June 13, 1995.

Richard Glen Curtis, Lacy, Katzen, Ryen & Mittleman, Rochester, NY, for plaintiff.

Monica Robinson Heath, Blitman & King, Syracuse, NY, for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Carrie Rice ("Rice"), commenced this action against defendants, Rochester Laborers' Annuity Fund ("the Fund"), Robert Brown, a member of the Fund's board of trustees, and Shirley Jenkins ("Jenkins"), administrative manager of the Fund, pursuant to various provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., ("ERISA").

In essence, plaintiff claims that defendants improperly paid her husband, Harold Rice, Jr., a plan participant in the Fund, a lump sum payment of his interest in the Fund without first obtaining her written consent, as required by 29 U.S.C. § 1055(c)(2), waiving her qualified joint and survivor annuity form of benefit. Although Rice and her husband have been separated, they remain legally married. It is not disputed that on December 11, 1991, the Fund tendered a check to Harold Rice for $9,370.16, the full value of his account at that time.

Rice seeks a declaration of her rights under the plan pursuant to 29 U.S.C. § 1132(a) and for attorney's fees pursuant to § 1132(g).

The parties have cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, plaintiff's motion for summary judgment is granted, her request for attorney's fees is granted and defendants' motion for summary judgment is denied.

### FACTS

Harold Rice had been a member of the Rochester Laborers' Union for some years and had participated in the union's pension plan for about eight years. Under the benefit provisions of the Fund, Harold Rice was entitled to receive a lifetime annuity and upon his death, his spouse was entitled to receive a survivor annuity equal to fifty percent of his benefits. Harold Rice also had the option of receiving at any time, in a lump sum, the full value of his account, but only if he received his spouse's written consent to such a distribution.

Plaintiff and Harold Rice remain legally married although they have been estranged for about six years. Although the record is not entirely clear on this point, the parties were apparently engaged in divorce proceedings at the time of the incidents in question.

The facts leading up to this dispute began on or about October 9, 1991, when plaintiff's attorney sent a letter to the Rochester Laborers' *Welfare* Fund advising it, in substance, that he feared Harold Rice might seek to defraud his wife by submitting a forged signature to the Fund to obtain a lump sum benefit in derogation of plaintiff's rights. Specifically, the attorney advised the Welfare Fund that he represented the wife of Harold Rice, Jr., "a member of your Union and a participant in the Union Pension Plan." The attorney advised that he believed Harold Rice would attempt to obtain a lump sum payment "sometime in November of 1991 or thereafter . . ." The attorney requested that any spousal consent form be sent to the attorney's attention in order to prevent the possibility of Harold Rice defrauding his client and the Fund.

Defendants do not deny receiving the letter dated October 9, 1991, from plaintiff's attorney. In fact, defendant Jenkins, in her affidavit, admits that the letter "has been brought to my attention." Moreover, in their answer to plaintiff's complaint, defendants admitted that plaintiff's attorney sent the letter dated October 19, 1991, "to the Rochester Laborers' Welfare Fund rather than to the defendant Rochester Laborers' Annuity Fund."

On November 19, 1991, a little more than forty days after plaintiff's attorneys letter, the Fund received Harold Rice's application for a lump sum payment of his benefits under the Plan. The application required the

applicant to fill out either Section I, certifying that he was not legally married or Section II, for married participants, requiring a waiver of the spouse's fifty percent lifetime annuity benefit. Remarkably, Harold Rice filled out *both* Section I and II. In Section I, he indicated that he was not married but Section II contained the purported signature of "Carrie Rice" professing to waive all interest in the spousal annuity. The signature was notarized but plaintiff claims, and defendants do not dispute, that the signature was in fact a forgery.

In spite of plaintiff's counsel letter, defendants never notified plaintiff or her attorney that the anticipated application had in fact been made. On November 11, 1991, twenty-two days after Harold Rice's request, the Fund tendered a check to him for $9,370.16, which was the full value of his account. It is not disputed that the check was tendered to Harold Rice without question and without any further clarification concerning his request or his wife's intent in the matter.

### DISCUSSION

#### I. Amendment of Complaint Concerning Relief Requested.

In her complaint, plaintiff described the action as an action "by a beneficiary for monetary relief arising out of the breach of fiduciary duties by Defendants under ... 29 U.S.C. § 1055(c)(2) and 1044." (Complaint, ¶ 1). In her *ad damnum* clause, plaintiff requested a money judgment for $4685.08 plus interest from December 11, 1991, attorney's fees "and such other and further relief as to the Court may seem just and proper."

Plaintiff now recognizes that she is not entitled to recover a money judgment against the Fund since her rights as a beneficiary are conditional, that is, she must survive her husband before she is entitled to any benefits.

█ Plaintiff now properly seeks a declaration and clarification of her rights under the Plan pursuant to 29 U.S.C. § 1132(a) rather than a money judgment. Although such relief was not specifically demanded in the complaint, that complaint is broad enough under Fed.R.Civ.P. 8 to cover such

relief. The Court is not limited to the relief requested in the complaint but may provide other relief if the evidence and law warrant it. Fed.R.Civ.P. 54(c); *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 171 (2d Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985).

In addition, of course, the Court may allow amendment of the pleadings under Rule 15(a) at any time. Defendants do not oppose this alternative form of relief and in any event, they have shown no prejudice whatsoever by this modification of the requested relief for a clarification of plaintiff's rights.

#### II. Determination of Plaintiff's Rights Under the Fund.

█ There is no dispute that the spouse of a Plan participant, such as plaintiff, has an interest in the Fund because of her right to receive a survivor's annuity. As defined by the Act, plaintiff is a "beneficiary" of the Fund. 29 U.S.C. § 1002(8).

It is also clear that in such capacity, plaintiff has standing to maintain an action under § 1132(a) to establish and clarify her rights to future benefits. *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 977–979 (7th Cir.1989).

The defense presented by the Fund in this case is not that there was a *bona fide* waiver of the survivor's annuity by the true Mrs. Rice, but that the Fund should be entitled to rely on the notarized signature purportedly made by Harold Rice's wife pursuant to the provisions of 29 U.S.C. § 1055(c)(6).

In pertinent part, § 1055(c)(6) provides that consents or waivers of spousal survivor's rights pursuant to § 1055(c)(2), shall "discharg[e] the Plan from liability to the extent of payments made ..." if the "plan fiduciary" acts in accordance with the "prudent man" standard of care set out at § 1104.

A waiver of the survivor's annuity benefit is valid only if the spouse acknowledges the effect of such an election or waiver in writing and if such signature is "witnessed by a plan representative or a notary public." § 1055(c)(2)(A).

Simply put, the Fund's defense here is that its administrators were entitled to rely on the notarized consent purportedly signed by Harold Rice's "wife" and the receipt of that document discharged the Fund, in its view, from all liability concerning the allegedly improper payment to Harold Rice.

■ For several reasons, I find this "defense" unpersuasive and unavailing on the facts of this case. The facts demonstrate, as a matter of law, that the Plan's administrators failed to act in accordance with their fiduciary obligations under § 1104. The "defense" contemplated under § 1055(c)(6) exists only if the administrator acted according to the prudent man standard of care. Here, the administrator failed to live up to that standard and, therefore, the Fund remains liable to plaintiff for any rights she may have as the spouse of a Plan participant. The premature payment to Harold Rice does not relieve the Fund of its obligation to plaintiff.

Clearly, Congress intended to protect spouses' interests in a participant's benefits. The ERISA statute contains specific detailed requirements that must be met before the interest of the spouse can be terminated.

ERISA contains strict rules for protecting the spouse's interest in the participant's benefits.... Under ERISA, waiver of the qualified joint and survivor annuity, the standard form of payment from a defined benefit plan to a participant before death, is invalid unless it satisfies the rigorous rules in § 1055(c).

*Lester v. Reagan Equip. Co. Profit Sharing Plan & Emple. Sav. Plan,* Civ. Action No. 91–2946 § N, 1992 WL 211611, at *5, 1992 U.S. Dist. LEXIS 12872 (E.D.La. Aug. 19, 1992) at *16; *see also, Abott v. Caron,* No. 86–Civ. 9108, 1990 WL 209364, *2, 1990 U.S. Dist. LEXIS 16498, *5 ("Courts have uniformly held that the clear intent of Congress in passing the REA [Retirement Equity Act of 1984] was to preserve the benefits of spouses.")

■ The statute protects spouses by establishing requirements that must be met to insure that the spouse consents to an act that may divest her of the right to receive benefits in the future. *See* § 1055(c)(2). If the

Plan's administrator complies with these requirements, he is shielded from liability as long as he acts consistent with his fiduciary obligations.

The Plan's administrator cannot, however, ignore obvious warning signs that suggest an obligation to inquire.

If the plan administrator acts in accordance with the fiduciary standards of ERISA in securing spousal consent ... then the plan will not be liable for payments to the surviving spouse. For example, if the plan administrator receives a notarized spousal consent, *valid on its face,* which the administrator has *no reason to believe* is invalid, the plan would certain be allowed to rely on the consent even if it is, in fact, invalid.

Sen.Rep. No. 575, 98th Cong.2d Sess., Reprinted in 1984 U.S.C.C.A.N. 2547, 2560 (emphasis added).

If this were a case where the Fund's administrator received an unanticipated request for a lump sum distribution coupled with an apparently valid notarized signature of the spouse consenting to that distribution, we would have a different case. Section 1055(c)(6) would dictate that the Fund should not be liable for the mistaken payment, if in fact the wife's signature had been forged. But in this case, the Fund had additional information which compelled a prudent plan administrator to inquire further prior to taking action which effectively terminated the spouse's survivorship interest. Here the Fund had been warned by an attorney that there was a potential for a fraud to occur. The attorney indicated the type of action, withdrawal of Harold Rice's accrued benefits, and the approximate month that this would occur, November 1991, as well as the likelihood that his client's signature would be forged. This letter put the Fund on notice of a potential problem which they could not ignore. Indeed, as events developed, the mischief forecast by plaintiff's attorney transpired just as he had forewarned.

The fact that the attorney's letter was sent to the "Rochester Laborers Welfare Fund" rather than the "Rochester Laborers Annuity Fund" does not alter this result. It is clear from the proof that both entities share

office space, have the same telephone number and are listed together in the telephone book. It is uncontested that defendant Jenkins is the administrative manager for both Funds. In addition, the attorney's letter identified Harold Rice by name and the Plan to which he belonged. The letter recited that Harold Rice "is a member of your Union and a participant in the Union Pension Plan." Under these circumstances, the Fund was charged with knowledge of the letter.

In addition, the standard form submitted by Harold Rice was ambiguous and contradictory on its face. Rice completed portions of the form that were mutually exclusive. In one part, he indicated that he was not married, and then proceeded to complete the balance of the form, with the forged signature, indicating that his "wife" consented to waive her survivorship benefits. This facial ambiguity on the form coupled with the information that had been communicated by plaintiff's attorney required the Fund to inquire further into the circumstances surrounding Harold Rice's request. Armed with the information at hand, the Fund had an obligation to inquire and clarify the circumstances prior to issuing the lump sum payment to Harold Rice.

■■■ The Fund's administrator as a fiduciary was required to act in all cases to protect the interest of beneficiaries such as plaintiff. *See John Blair Communications v. Telemundo Group,* 26 F.3d 360, 367 (2d Cir.1994). A fiduciary breaches his § 1104 duty to a plan participant by preventing or interfering with the receipt of benefits to which the participant is entitled. *Blatt v. Marshall & Lassman,* 812 F.2d 810 (2d Cir. 1987). Under ERISA, a fiduciary's duties to participants and beneficiaries are "the highest known to law." *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Section 1104 of ERISA "is a more stringent version of the prudent person standard than in the common law of trusts." *Reich v. Valley Nat'l Bank of Arizona,* 837 F.Supp. 1259, 1273 (S.D.N.Y.1993).

■■■ The Fund's administrator failed to act as a prudent administrator should have acted under all the circumstances. The Fund's administrator erred in accepting the conflicted request form without question and without further inquiry. The administrators as fiduciaries are charged with acting prudently under the circumstances, *Lester,* 1992 WL 211611 at *6–7, 1992 U.S. Dist. LEXIS 12872 at *19–20, and, in my judgment, as a matter of law, the Fund's fiduciaries failed to do so here.

There is little doubt that plaintiff did all she reasonably could have done to protect her vital interests. She obtained counsel and promptly notified the Fund, with remarkable precision, of the potential fraud. The Fund's administrators, as fiduciaries, should not have ignored the clear warnings presented by plaintiff when they received the ambiguous request for a lump sum distribution from plaintiff's husband.

In light of the above, I determine and declare, pursuant to § 1132(a), that plaintiff retains all rights to obtain survivorship benefits that she had prior to the Fund's lump sum distribution to Harold Rice. All plaintiff's rights to participate as a surviving spouse remain unaffected by the forged waiver and the Fund's subsequent distribution of the lump sum payment to Harold Rice. The forged waiver, under the circumstances here, is of no force and effect and does not terminate plaintiff's interests. It up to the Fund to take whatever steps are necessary to insure that plaintiff's survivorship's rights are protected in all respects.

### III. *Attorney's Fees.*

It is within the discretion of the Court to award reasonable attorney's fees and costs "to either party" in an ERISA action. "In any action under this title ... by a ... beneficiary ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

■■■ In determining whether to award fees, the Court should consider the following factors:

(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of at-

torney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Mendez v. Teachers Ins. and Annuity Ass'n.*, 982 F.2d 783, 788 (2d Cir.1992) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987)). No single factor is necessarily decisive, and not all factors may be germane in a particular case. *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir.1993).

▪ In exercising its discretion the Court should heed the Second Circuit's directive that "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." *Chambless*, 815 F.2d at 872.

Three circuits have held that prevailing plaintiffs in ERISA cases should, as a general rule, "be entitled to a reasonable attorney's fee if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1392 (9th Cir. 1994); *Rodriguez v. MEBA Pension Trust*, 956 F.2d 468, 471 (4th Cir.1992) (mandating a presumption favoring prevailing ERISA plaintiffs); *Hechenberger v. Western Elec. Co., Inc.*, 786 F.2d 347, 348 (8th Cir.) (ERISA plaintiffs who prevail "are entitled to attorneys' fees unless special circumstances exist that would render an award of fees unjust."), *cert. denied*, 479 U.S. 849, 107 S.Ct. 173, 93 L.Ed.2d 110 (1986). Other circuits decline to follow the precept that prevailing parties in ERISA cases are presumed to be entitled to attorney's fees. *See Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir.1993) ("The law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action."); *Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268, 1274–75 (3d Cir.1992) (rejecting the "special circumstances" rule and holding that a presumption in favor of granting attorney's fees to prevailing plaintiff is not required or ap-

propriate under § 1132(g)(1)). Under appropriate circumstances though, all circuits recognize that in the discretion of the Court, attorney's fees may be awarded to the prevailing party. The Second Circuit appears to have indicated a policy in favor of awarding fees to the prevailing plaintiff in most cases. "[A]ttorney's fees may be awarded to the prevailing party under ERISA in the absence of some particular justification for not doing so." *Birmingham v. SoGen–Swiss Intern. Corp. Retirement Plan*, 718 F.2d 515, 523 (2d Cir.1983).

▪ In my view, the circumstances in this case warrant an award of attorney's fees to plaintiff. First, as set forth above, there is little else plaintiff could have done to warn defendants concerning Harold Rice's fraudulent conduct. To the extent that defendants ignored plaintiff's attorney's warnings, they clearly acted at their peril. Defendants do not deny the facts underlying plaintiff's claim and have offered no explanations whatsoever for their careless conduct. *See Pagovich v. Moskowitz*, 865 F.Supp. 130, 139 (S.D.N.Y. 1994). Defendants' conduct made this action necessary. Plaintiff was forced to file suit to protect her rights and interest in the Fund which defendants jeopardized by their conduct. *See Mendez v. Teachers Ins. and Annuity Ass'n*, 789 F.Supp. 139, 141 (S.D.N.Y.), *aff'd*, 982 F.2d 783 (2d Cir.1992).

Deterrence is also a factor here. It seems self-evident that awarding attorney's fees will encourage defendants to use greater caution in future situations of this type. "[A]n award of attorney's fees here should encourage ERISA fiduciaries to exercise a reasonable degree of diligence...." *Id.* In addition, it appears that the Fund has sufficient assets to cover the modest award requested here.

On the merits, plaintiff's position is clearly meritorious, as discussed above. This is not a case where "the losing party has presented a meritorious, albeit unsuccessful, argument," thereby avoiding having to pay attorney's fees under § 1132(g)(1). *Renda v. Adam Meldrum & Anderson Co.*, 806 F.Supp. 1071, 1084 (W.D.N.Y.1992).

The fee request is reasonable and the hourly rates consistent with rates in this community for similar work.

Therefore, the Court awards attorney's fees of $6,973.65 to plaintiff. (*See* Affirmation of Services of Plaintiff's Attorneys sworn to January 17, 1995 by Richard Glen Curtis.)

### *CONCLUSION*

IT IS ORDERED that, pursuant to 29 U.S.C. § 1132(a), the Court hereby enters a declaratory judgment that plaintiff, Carrie Rice, retains all rights and privileges as the wife of Harold Rice, Jr., a participant in the Rochester Laborers' Annuity Fund. Her rights and privileges remain in full force and effect and are not affected in any way by the lump-sum distribution to Harold Rice on or about November 11, 1991.

IT IS FURTHER ORDERED that the Rochester Laborers' Annuity Fund take whatever steps are necessary and appropriate to guarantee that plaintiff's rights as a beneficiary remain in full force and effect.

IT IS FURTHER ORDERED that defendant Rochester Laborers' Annuity Fund pay plaintiff's counsel, Richard Glen Curtis, Esq., the sum of $6,973.65 for attorney's fees, pursuant to 29 U.S.C. § 1132(g) within twenty (20) days of entry of this Decision and Order.

IT IS SO ORDERED.