[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13974

_____

D.C. Docket No. 9:17-cv-80281-RLR

THERESA E. PEER,

Plaintiff-Appellee,

PAUL MARTIN SULLIVAN, JR.,

Interested Party-Appellant-Cross Appellee,

versus

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

Defendant-Appellee-Cross Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 6, 2021)

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

To resolve this appeal, we must decide whether the Employment Retirement Income Security Act's fee-shifting provision, 29 U.S.C. § 1132(g)(1), permits a court to award fees against a party's counsel. This issue is a question of first impression that has split the district courts within and without this circuit. Here, the district court held that ERISA's fee-shifting provision permits a fee award against counsel and awarded attorney's fees against Theresa E. Peer's counsel, Paul Sullivan, but not against Peer herself. Sullivan appealed the award, arguing that ERISA does not allow a fee award against counsel. Liberty Life Assurance Company of Boston cross-appealed, arguing that the district court erred by awarding fees only against Sullivan and not Peer too.

We agree with Sullivan that ERISA's fee-shifting provision in Section 1132(g)(1) cannot support a fee award against counsel. The function of this statute is not to sanction attorney misconduct. That role belongs to other provisions, such as 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11(c). But the court here relied exclusively on Section 1132(g)(1) when awarding fees. Because we reverse and vacate the court's fee award, we do not address Liberty Life's argument that the district court should have imposed fees against Peer. On remand, the court may consider whether a fee award is appropriate against Peer under ERISA or against Peer or Sullivan under another statute, rule, or the court's inherent authority.

2

**I.**

This appeal arises from litigation over Peer's ERISA-governed insurance policy. Liberty Life insures the policy's life insurance benefits. Under the policy's provisions, policyholders who are totally disabled are entitled to a waiver of policy premiums for the duration of their disability. Liberty Life denied Peer this benefit after determining that she was not disabled from "any occupation." Peer hired Sullivan as counsel to appeal that adverse benefits determination, but the decision was upheld on administrative appeal. Peer then filed a lawsuit against Liberty Life, seeking (1) a waiver of premium, (2) clarification of her right to future benefits, and (3) a reasonable claims procedure going forward. Five months after Peer filed her lawsuit, Liberty Life gave up: it reinstated her coverage and the waiver of premium benefit retroactive to the original termination date.

At that point, Liberty Life advised the court that it had mooted the only issue in Peer's pending motion for summary judgment. After considering the parties' briefing, the court denied the motion as moot and also dismissed as moot Peer's claim for waiver of premium. The court then directed Peer to identify any remaining issues. After reviewing Peer's response, the court held that each issue identified was either rendered moot by the reinstatement of coverage under a waiver of premium or was "confusingly intertwined" with the mooted issues. The court closed the case but granted Peer leave to amend her complaint.

Peer filed an amended complaint that incorporated by reference all forty-six paragraphs of her original complaint. The amended complaint also added a second count that recited the procedural history of the case and rephrased the claims for relief that had previously been declared moot. The court struck the amended complaint for failing to comply with the court's local rules that prohibit incorporating previous pleadings without restating the averments. Peer then filed a second amended complaint that block-quoted the original complaint for Count I and repeated Count II verbatim.

The court remained confused as to why Peer was attempting to maintain the mooted action and consequently "utilized an unusual case management procedure and issued interrogatories directly to" Sullivan. The court asked Sullivan whether the case presented questions of law, capable of resolution on summary judgment, or whether only factual issues remained. Sullivan responded that legal issues remained for the court to address, so the court "set a status conference for [Sullivan] to explain to the [c]ourt, in person, what relief needed adjudication."

After the status conference, the court dismissed the claims in Count I and granted judgment on the pleadings as to Count II. The court held Count I was moot and Count II was not ripe because Peer was seeking an advisory opinion about her rights if Liberty Life were to render an adverse benefits determination in the future. Peer appealed, and this Court affirmed. *Peer v. Liberty Life Assur. Co. of Boston*,

4

758 F.App'x 882, 884–85 (11th Cir. 2019). This Court held that "Peer has already received the relief that she seeks, and 'there is no further relief that the Court can award [Peer].'" *Id.* at 884. And we agreed that any claim for adjudication of the right to future benefits was unripe. *Id.*

On remand, Liberty Life and Peer moved for attorney's fees under 29 U.S.C. § 1132(g)(1). The district court granted both motions in part. It awarded Peer attorney's fees for work performed from the commencement of her suit until her policy was reinstated. It awarded Liberty Life attorney's fees incurred for any work performed after the reinstatement of Peer's policy, including fees for litigating the appeal. The court directed Liberty Life to pay Peer's fees, and Sullivan, not Peer, to pay Liberty Life's fees. The court entered the fee award against Sullivan for two reasons: (1) if Sullivan "had brought [Peer's] claims with cogent clarity, this case would have ended soon after August 2, 2017," but Sullivan kept the court in a "systemic state of confusion" and caused Liberty Life to expend "considerable resources"; and (2) Sullivan had thirty years of ERISA experience and "should have known that [Peer's] case was moot and that there was no further justiciable controversy between the parties."

Peer filed a motion to alter judgment, but the court denied it within the hour and without a response from Liberty Life. Sullivan timely appealed. Liberty Life

5

cross-appealed the fee order, arguing that the court erred in assessing attorney's fees solely against Sullivan but not Peer.

## II.

We review a court's decision to award fees or to issue sanctions for an abuse of discretion. *Sierra Club v. Hankinson*, 351 F.3d 1358, 1361 (11th Cir. 2003) (attorney's fees); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237–38 (11th Cir. 2007) (sanctions). A court abuses its discretion if it acts contrary to the law. *See Amlong*, 500 F.3d at 1238 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## III.

ERISA's fee-shifting statute provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The question for us is whether a court has discretion under this statute to require an *attorney* to pay another party's fees. We hold that it does not. We believe that this statute is best understood to authorize fee awards against parties, not their counsel. This is so for several reasons.

First, this reading accords with common law principles that inform our interpretation of the statute. Our legal system is based on the "bedrock principle" of the American rule, which presumes that each party will pay its own attorney's fees. *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 252–53 (2010). Under our

common law, the judiciary does not have "roving authority . . . to allow counsel fees . . . whenever the courts might deem them warranted." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress may override common-law rules, even bedrock ones, but it must do so explicitly. *See id.* at 602; *see also* Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 318 (2012). Because the American Rule has deep roots in our common law, *see Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306 (1796), we must read fee-shifting statutes strictly "with a presumption favoring the retention of long-established and familiar [legal] principles." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). *See also Shaw v. Merchants' Nat'l Bank*, 101 U.S. 557, 565 (1879).

Applying these principles to Title VII of the Civil Rights Act, we held that Title VII's fee-shifting provision does not support an attorney's fee award against counsel. *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 915 (11th Cir. 1982). That statute, like the ERISA provision at issue here, provides for an award of fees without specifying who is supposed to pay. *See* 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs."); 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). Because "[n]either § 1988 nor § 2000e-5(k) makes any mention of attorney liability for costs

7

and fees," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 (1980), we held that the statute "authorizes attorney's fees *only* against litigants, not against counsel." *Amlong*, 500 F.3d at 1238. Other courts have relied on similar reasoning to disallow fee awards against attorneys in a "wide array of contexts," including "under the Securities Act, under the False Claims Act, under the Federal Rules of Civil Procedure, and under the Copyright Act." *In re Crescent City Estates, LLC*, 588 F.3d 822, 828 (4th Cir. 2009).

Like Title VII, there is no question that ERISA authorizes an award of fees. A court may award fees "to either party." But, also like Title VII, the statute does not identify who must pay the fee award. *Compare* 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). The statute references plan "participant[s]," "beneficiar[ies]," and "fiduciar[ies]," but it does not mention attorneys or counsel. "The proper presumption is that when a fee-shifting statute does not explicitly permit a fee award against counsel, it prohibits it." *Crescent City Estates*, 588 F.3d at 825; *see also Healy v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991). Because ERISA is silent about who must pay a fee award, the statute does not allow a court to award fees against a party's lawyers.

8

Liberty Life argues that this authority is distinguishable—and this reasoning wrongheaded—because ERISA's fee provision, unlike some others, does not impose a presumption in favor of awarding fees to a prevailing party. But that is a distinction without a difference. The reason courts have held that Title VII and other similar provisions do not allow an award of fees against counsel is because Congress did not make such an intent clear. The Supreme Court has explained that, "[w]ithout an express indication of congressional intent," there is "no persuasive justification for subjecting lawyers in different areas of practice to differing sanctions for dilatory conduct." *Roadway Express*, 447 U.S. at 763. The same reasoning applies here, even though ERISA's fee-shifting provision, unlike Title VII, does not create a presumption in favor of awarding fees.

Second, this reading is consistent with our view of ERISA generally. "Where ERISA is silent on an issue, Congress intended for courts to fashion a federal common law governing employee benefit plans." *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 931 (11th Cir. 2021). We evaluate proposed additions to ERISA's common law by asking "whether the rule, if adopted, would further ERISA's scheme and goals," namely, "(1) protection of the interests of employees and their beneficiaries in employee benefit plans; and (2) uniformity in the administration of employee benefit plans." *Id.* at 931–32 (quoting *Horton v. Rel. Std. Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998)). Our caselaw establishes that

9

ERISA is not primarily about punishing misconduct. *See, e.g.*, *McRae v. Seafarers' Welfare Plan*, 920 F.2d 819, 821–22 (11th Cir. 1991) (Wisdom, J.) (explaining that no punitive damages available under Sections 1109 or 1132(a)(3) of ERISA). And we see no benefit to employees or uniformity in creating a special sanctions regime for ERISA lawyers. If anything, such a standard would undermine ERISA by making it harder for beneficiaries and insurance plans to hire qualified counsel. Qualified attorneys might reject ERISA cases—for putative plaintiffs or defendants—because of the heightened personal risk involved.

Liberty Life argues that awards against counsel can be justified under our ERISA fee-shifting caselaw. But we disagree. We have instructed district courts to weigh five factors in determining whether to award fees under ERISA. *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). These factors focus on the parties, not their counsel. They include: "(1) the degree of the opposing *parties'* culpability or bad faith; (2) the ability of the opposing *parties* to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing *parties* would deter other persons acting under similar circumstances; (4) whether the *parties* requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) the relative merits of the *parties'* positions." *Id.* (emphasis added). Nothing in

10

this five-factor test suggests that the statute is best read to make an attorney liable for paying a party's fees.

Third, our holding minimizes disruption to the lawyer-client relationship. Spinoff fee litigation can cause friction in the lawyer-client relationship and put an attorney in an ethical quagmire. *See Crescent City Estates*, 588 F.3d at 830. This appeal is a case in point. After the district court made Sullivan liable for Liberty Life's attorney's fees, his relationship with his client, Peer, disintegrated. Sullivan argued on appeal that Peer, not he, should be liable. And Peer had no counsel to argue against Liberty Life's cross-appeal seeking to expand the fee award to include her. We would have to live with these consequences if ERISA's fee-shifting statute expressly applied to attorneys. But we should not create them for ourselves.

Fourth, our reading of the statute comports with the longstanding rule that clients are responsible for the actions of their lawyers, not the other way around. William A. Gregory, *The Law of Agency and Partnership* § 89B (3d ed. 2001); 4 Henry de Bracton, *On the Laws and Customs of England* 85 (George E. Woodbine ed., Samuel E. Thorne trans., 1977). The "act of the attorney is the act of his client." Oliver Wendell Holmes, Jr., *Agency*, 5 HARV. L. REV. 1, 7–8 (1891). Indeed, we have emphasized that, because the client "voluntarily" chooses an "attorney as his representative in the action," the client cannot "avoid the consequences of the acts or omissions of this freely selected agent." *Durrett*, 678 F.2d at 916. But this

principle rarely works in the reverse; as a general matter, an attorney is not responsible for his client's actions.

Fifth, reading this provision to allow an award of fees against a lawyer would circumvent procedures to sanction attorney misconduct. When attorney sanctions are appropriate, as they may be in this case, it is important that a district court apply the right test and follow the proper procedures. The law imposes a relatively high bar to sanction an attorney for his or her litigation choices, recognizing that attorneys should not generally "be required to risk personal liability merely for acting in a representational capacity or for seeking to place a client in a more favorable litigation posture." *Crescent City Estates*, 588 F.3d at 830. And when a lawyer goes beyond mere representation and advocacy into sanctionable or otherwise vexatious conduct, a court must afford due process to that lawyer. *See Reynolds v. Roberts*, 207 F.3d 1288, 1302 (11th Cir. 2000) (finding that attorney threatened with sanctions under Section 1927 was entitled to hearing). We cannot skirt these substantive and procedural requirements by shoehorning counsel into an ill-fitting fee-shifting statute.

In short, we hold that ERISA's fee-shifting statute, 29 U.S.C. § 1132(g)(1), does not allow a court to impose a fee award against a party's lawyer. Our precedent, common sense, and principles of statutory interpretation establish that the statute

12

allows a fee award against parties, not their counsel. Accordingly, we must reverse and vacate the fee award against Sullivan.

To be clear, however, we are not saying that Liberty Life must bear its own fees. Liberty Life argues that the district court could have sanctioned Sullivan under 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11(c), or the court's inherent authority. Similarly, Liberty Life argues that ERISA warrants awarding fees against Peer—arguing that Peer was responsible for much of what motivated the district court's fee award against Sullivan. We cannot answer whether the district court should exercise its discretion to sanction Sullivan for his conduct in that court. And, because we vacate the fee award that the district court entered against Sullivan, we cannot resolve whether that award should be broadened to apply against Peer. On remand, the district court may address these arguments in the first instance.

## IV.

Because the district court abused its discretion in assessing fees against Sullivan under Section 1132(g)(1), we reverse and vacate the fee award and remand for proceedings consistent with this opinion.

**REVERSED, VACATED, AND REMANDED.**