458]    *GREEN ARNOLD *v.* FULLER'S HEIRS.

*Sci. fa.—Supersedeas—Levy—Satisfaction.*

Levy of execution upon real estate is not vacated by writ of error and supersedeas.

Quashing *vendi.* and setting aside valuation does not affect a levy.

When *fi. fa.* is returned levied upon land, another *fi. fa.*, issued before the first levy is disposed of, is void.

Distinction between void and voidable·

*Sci. fa.* to vacate satisfaction improperly entered on judgment or execution.

THIS was a *scire facias*, brought before the supreme court in Gallia county, at the May term, 1824, by appeal from the common pleas. The facts of the case were these: At the August term, 1813, Samuel Green Arnold, obtained judgment against Sylvester Fuller, for $468.95 damages, and cost of suit. On the 8th July, 1814, an execution issued to David Ridgeway, sheriff of Gallia, which was returned no goods. On the 28th October, 1814, an *alias fi. fa. et lev. fa.* issued to the same sheriff, who returned that he had levied on one hundred acres of land, being lot No. 730, of town one, range fifteen, Ohio Company's purchase; and that further proceedings were stayed by writ of error, afterward abated by the death of Fuller; the·sheriff, Ridgeway, went out of office, and in February, 1818, a *vendi. expo.* issued to his successor, which was returned, property not sold for want of bidders. On motion of the defendant's counsel, this writ was quashed and the appraisement of the property set aside by the court. On the 28th November, 1819, a new execution issued to J. Holcomb, then sheriff of Gallia county, on which he returned that he had levied on a hundred acre lot of land, No. 730, town one, range fifteen, Ohio Company's purchase, and had sold the same to David Putnam, plaintiff's attorney, for $920. The receipt of the said Putnam was also returned with the following words: "$628. April 13, 1819. Received of Samuel R. Holcomb, by land bid off on this execution, six hundred and twenty-eight dollars, for debt and interest on this execution."

The defendant, Fuller, died intestate, having previously conveyed the land to his son, one of the present defendants. The

plaintiff avers, in his *scire facias,* that by reason of the premises, the sale was inoperative and void, and that his judgment still remains unsatisfied.    The defendants are called upon to show cause why the proceedings, since the death of the defendant, Sylvester Fuller, should not be set aside, and the judgment satisfied of the lands and real estate of the said Fuller, deceased, and particularly of the said lot, No. 730.

The defendants demurred, and the plaintiff joined in demurrer.

*King,* in support of the demurrer: .                    [459

1. A writ of *sci. fa.* does not lie in a case like the present, and to effect the objects prayed for.

A *sci. fa.* is a judicial writ founded on some matter of record, as a recognizance at common law, or by statute, judgment, letters patent, and the like, to enforce execution of them, or to vacate and set them aside.    F. N. B. 267; 6 Bac. 102; 2 Saund. 70, note 4.

As it respects the first class, recognizances and judgments, its object is to enforce them; and in respect to the second class, letters patent, it is to vacate or set them aside.    It is believed that in the English books, no case can be found where a *sci. fa.* has been permitted, to correct a train of irregularities committed by the party himself who sues the writ.

The cases from Connecticut, reported in Root & Day, are very questionable authority at best.    They stand upon particular circumstances, and ought not to be taken as a rule, except in cases similarly situate.

It is urged that the errors in this case might have been corrected on motion, and the same may be done by *sci. fa.*

If this were admitted, which it is not, it would not affect the argument.    After the length of time that has elapsed between the inception and consummation of these proceedings; and the period from their consummation to the suing out of this writ, the court would not interfere on motion to correct irregularities, but would leave the party to abide the consequence of his own negligence.

2. The original judgment, in this case, was rendered in a personal action, and at common law, no writ of *sci. fa.* lay to revive a judgment in a personal action, if a year and a day elapsed without suing execution.    The plaintiff was driven to his original

465

action of debt upon such judgment. 2 Inst. 469; 2 Salk. 600; 6 Bac. 104.

In personal actions, this writ was given by the statute, 2 West; 13 Ed. 1; which is not in force in this state. If we have a common law for framing judicial writs, it must be the same that existed in England before it was modified by statute, and we have no statute giving a writ of *sci. fa.* in a case like the present.

3. If in such case a writ of *sci. fa.* might issue under our laws, this writ is not properly conceived.

460] *It is issued jointly against the purchaser, or *terre tenant*, and the heirs of the judgment debtor. It can not issue against the *terre tenant* until the heir is summoned, for he may show payment or a release. It can not issue against the *terre tenant* and heir until the personal representatives are summoned, or nihil returned: for they may show payment or a release. 6 Bac. 114; 2 Todd. Pr. 1032. This writ is, therefore, irregular.

The *sci. fa.* prays to set aside the *alias fi. fa.* levy, appraisement, and sale, and the entry of satisfaction, and calls upon the defendants to show cause why a *vendi.* should not issue on the levy made in the lifetime of Fuller. This can not be done.

Upon the allowance of the writ of error, a *supersedeas* direct issued, by which the levy was removed. The writ commands the person to whom it is addressed to forbear doing the act superseded, or if it be already done, to annul it as far as possible. F. N. B. 236; 6 Bac. 414.

If a writ of *hab. fac. pos.* issue irregularly and be executed, a *supersedeas* restores the possession. If goods be taken on a *fi. fa.* and before sale the debtor delivers to the sheriff a *supersedeas* upon writ of error, the goods are to be restored. If an officer detain a person in custody arrested upon a *ca. sa.* or *exigent*, after writ of *supersedeas* delivered to him, it is a trespass. 1 Vent. 30; Cro. Jas. 379; 1 Roll. 241.

Upon these principles the levy on the *fi. fa.* was vacated, upon the service of the *supersedeas*, in this case. No new execution can issue. The party's remedy is by action on the bond in error, or upon the judgment.

DOUGLASS, on the same side, maintained:

That the sale upon the last *fi. fa.* was good. Where a judgment creates a lien, an execution issued after the defendant's death is

466

Arnold *v.* Fuller's Heirs.

not void, and if not objected to at the return, can never after be questioned. 13 Johns. 550; 16 Johns. 576.

A *sci. fa.* against heirs is not absolutely necessary; a good title may vest in the purchaser without it. 4 Dall. 115; 2 Bin. 227; 8 Johns. 361.

Our statute under which the proceedings were had, did not require a *sci. fa.* against heirs, or *terre tenant.* This was first required by the statues of 1822.

*GRAINGER,† for the plaintiff:                                [461

By the writs of error and supersedeas the power of the execution and judgment was suspended until the writ of error should be determined. But the levy was not thereby removed or affected. It remained in *statu quo*, as the writ of error found it. 5 Com. Dig. 294.

Upon the death of the defendant, Fuller, and consequent abatement of the writ of error, the supersedeas was terminated. The case stood as if no writ of error had been issued. But, by the death, an interest in the property levied on became vested in the heir.

The return of *nulla bona* on the original *fi. fa.* negatives the suggestion that there might be personal property which might render it proper to proceed against the personal representative. Besides the levy on the land remains in force, which being *pro tanto* a satisfaction, the personal representative could not be proceeded against.

The effect of a *sci. fa.* is not to obtain a new judgment; it only reanimates that, the vital power of which was suspended. It takes up the proceedings as they stood at the instant of the death, when the suspension took place, and gives the remedy against the property of the deceased, which, at the time, was liable to be affected by the judgment in whosever hands it may be. 2 Seld. 188.

Here this particular property, and this only, was liable to the

---

†The late Ebenezer Grainger, of Zanesville. He died in September, 1822; but he had been retained by the plaintiff, and the argument, from which this abstract is made, was found, in an unfinished state, among his papers. It is, probably, all that the judicial history of the state can preserve of one of her most valuable and soundest lawyers.

judgment; at all events, no other property could be touched until this was disposed of, and proved insufficient. And the interest in the property being by the death vested in the heir, or *terre tenant*, none other need or could be made parties to the *sci. fa.*

It is said in 2 Saund. 72, "that a *sci. fa.* must issue against the personal representative, and *nihil* be returned before it can go against the heir or *terre tenant.* Carthew is referred to as authority, where it is only given as argument of counsel; and as many authorities are cited against as for it. If in England the law is so settled, it would seem but matter of form. For where it is intended to go against the heir, or *terre tenant*, the practice is to put 462] the *sci. fa.* into *the hands of the officer fifteen days before the return, with directions to return *nihil*, which is done without making any search whatever.

But in this case such proceedings must be unnecessary. Until the levy on the land is disposed of, no proceeding can be had except against the heir, or *terre tenant.* The personal representative has nothing to do with the matter.

The proceedings subsequent to the death of Fuller, though irregular and void as against all parties, yet having resulted in an entry of satisfaction, upon execution, must be removed before the plaintiff can proceed regularly upon his judgment. For this the writ of *sci. fa.* is a proper process. It is in the nature of a bill in equity, and the court will go into any inquiry calculated to elucidate the right and justice of the case. 6 Bac. 120.

In Langdon v. Langdon, 1 Root, 453, a *sci. fa.* issued for the very purpose of removing out of the way irregular proceedings upon execution, in consequence of which it was indorsed satisfied. In 4 Day, 222, there is also a case fully in point.

The case of Jackson v. Robins, 16 Johns. 576, was cited by one of the counsel to show that the sale under the last *fi. fa.* was good. But it by no means sustains that position. It decides that certain irregularities in a sheriff's sale, which rendered the sale voidable, but not void, should not be inquired into on ejectment against the purchaser thirty years after the sale. Here the sale is recent, and the process upon which it was made not merely irregular, but void; both because of the existing levy, and, if that was out of the way, because of the death of the defendant.

It is well settled, that where there is a single defendant, who

dies after judgment and before execution, there must be a *sci. fa.* before execution can issue. 2 Saund. 6, n. 1; 2 Ld. Raym. 768; 2 Seld. 190; 4 Day, 226.

Opinion of the court, by Judge BURNET:

Several questions are presented in this case: 1. Did the writ of error and supersedeas avoid and vacate the execution and levy, so as to render it a nullity, or did it merely stay the proceedings of the sheriff. 2. If the latter, did the order of the court, quashing the *vend. expo.* and setting aside *the appraisement, [463 affect the *lev. fa.* and the levy made thereon. 3. If the supersedeas merely stayed the proceedings, was the execution of November 28, 1818, and the sale made thereon, merely irregular, or altogether void, so as to entitle the plaintiff to the relief prayed for. 4. Can a *scire facias* be sustained in a case like the present.

As to the first point, no authority has been cited to show the effect of a supersedeas on an execution levied on real estate. It is said in the books, that the object of a supersedeas is to stay proceedings *till the errors are disposed of*. In the Bishop of Ossory's case, Cro. Jas. 534, it was resolved by all the court, that the writ of error was a supersedeas *till the error was examined, affirmed, or reversed*. In Badger *v.* Lloyd, 3 Salk. 145, it was said by Holt, Chief Justice, that although a writ of error forecloses the court, and ties up their hands, yet it doth not alter the right of the parties.

If a writ of error be allowed on the return day of a *ca. sa.*, the sheriff may, notwithstanding, return the writ *non est*, the plaintiff shall have the benefit of the return, and may afterward proceed against the bail. Parkins *v.* Wilson, 2 Ld. Raym. 1256. This could not be the case if the allowance rendered the execution a nullity. The same inference may be drawn from the reason given for quashing the writ in the case of Smith *v.* Nicholson, 2 Stra. 1186. A *ca. sa.* had been taken out on the 3d of December, for the purpose of proceeding against bail. On the next day a writ of error was allowed, after which the *ca. sa.* was returned *non est inventus*. After the writ of error was at an end, the plaintiff proceeded by *scire facias* against the bail. On motion the whole proceedings were set aside, because the return of *non est inventus* was obtained after notice of the writ of error, which, in its nature, stops all proceedings. The sheriff could not so much as look after

the defendant, in order to ground such a return thereon.   The reason is apparent; as the rule required the *ca. sa.* to remain four days in the sheriff's office before he was authorized to return a *non est inventus*, for the purpose of fixing the bail, and as the writ of error was allowed the next day after the *ca. sa.* issued, the operation of the *ca. sa.* was suspended before it was ripe for the return, 464] and while something remained to *be done, which the allowance prohibited; but in the preceding case, the four days having elapsed before the allowance, the return was held to be good, and the bail was fixed.   This could not have been the case if the writ of error had affected the *ca. sa.* so as to render void that which had been done before the allowance.   In the one case, the execution being ripe for a return, before the supersedeas, the return was sustained, though made after the supersedeas.   In the other case, the execution having been superseded before it was ripe for a return, was considered a nullity.   The principle on which these cases were decided being applied to the case in hand, must lead to this conclusion : that as the *lev. fa.* had been levied, and was ready to be returned before the writ of error, the return was well made, and after the writ of error was at an end, the plaintiff was entitled to the benefit of it; but if the writ of error had been allowed after the execution had issued, but before the levy, the proceedings would have been void.   We find many cases in which executions have been set aside for having issued after the allowance of writs of error; but where the allowance has been after the issuing of the execution, the operation has been to stay further proceedings, leaving the matter in *statu quo*.   The general rule seems to be, that the writ of error operates as a supersedeas from the time of the allowance, and will therefore avoid an after execution, or levy ; but on the principle here contended for, it will have a retrospective effect, by operating on a writ and levy anterior to the allowance.   It would seem as reasonable that it should overreach an execution on which a part of the money had been levied and paid over before the allowance, as that it should render void a levy made before the allowance.   Neither the necessity of the case, nor the object of the writ, requires such an affect.   It does not follow from the allowance that the judgment will be reversed ; when, therefore, a levy is made on land, which neither changes the possession, nor restricts the occupant in the use of it, his purpose is gained by a stay of proceedings till the judgment be reversed or affirmed.

It is decided in Withers *v.* Henley, Cro. Jas. 379; cited by defendant, that a supersedeas is as good a cause to discharge a prisoner taken on a *ca. sa.* as the first process was to arrest him. This, however, is from *the necessity of the case, for on no other [465 principle can the party have the benefit of his writ of error. While that is pending the plaintiff ought not to hold a satisfaction of his judgment by detaining the defendant in custody. But the case of Sare *v.* Shelton, 2 Roll. Ab. 491, where it was holden, that, if before sale of goods seized under *fi. fa.*, the defendant deliver a writ of supersedeas, he shall have the goods again, because the property is not altered by the seizure, has been declared not to be law. 4 Bac., title Supersedeas, pl. 6, 7; Yelv. 6. In Charter *v.* Peter, Cro. Eliz. 597, the defendant's goods had been taken on a *fi. fa.*, and before sale a writ of error and supersedeas were taken. The sheriff returned the seizure, also that the goods remained in his hands for want of bidders, and that a supersedeas was awarded. All the court held, notwithstanding the supersedeas, in regard it came not to the sheriff until he had begun to make execution, that a *vend. expo.* should be awarded to perfect it. In Regina *v.* Nash, 2 Ld. Raym. 990, it was decided, that if goods are once levied, a certiorari, to remove the conviction, will not suspend their sale. In Clerk *v.* Withers, 1 Salk. 323, it was ruled that the sheriff might proceed to sell, after the plaintiff's death, and that execution being an entire thing, can not be superseded after it is begun. But admitting the case of Sare *v.* Shelton to be good law, it is by no means conclusive as to this case, for when goods and chattels are taken, the defendant loses the possession, and the property may be lost or destroyed during the pendency of the writ of error; but on a *lev. fa.* no such privation takes place. The possession and use of the property remain with the defendant; there is, therefore, no necessity for setting aside the writ and levy.

The second question does not admit of a doubt. The motion was confined to the *vend. expo.* and the appraisement, and the order of the court extended no further. The levy was not comprehended in the motion, and can not be affected by the order. · It is the constant practice to set aside valuations of property, without disturbing the levy; and it never has been supposed that such an order rendered it necessary to sue out a new writ, or to obtain a new levy.

*The next inquiry is, whether the *lev. fa.* of November 25, [466

1818, and the sale made thereon, were merely irregular or altogether void. In the case of Clerk *v.* Withers, before cited, it was resolved that the plaintiff's death did not abate the execution; that an execution is an entire thing, and can not be superseded after it is begun; that by the seizure the property was out of the defendant, and in abeyance, and that no further proceedings could be had against him, because the plaintiff had made his election. In Ladd *v.* Blunt, 4 Mass. 402, it was decided that after the sheriff has seized goods sufficient to satisfy the judgment, the defendant is. discharged, though the sheriff may have wasted the goods, squandered the money, or has not returned the execution.

In 2 Tidd, 937, it is laid down that when the sheriff takes goods upon a *fi. fa.* to the amount of the sum directed to be levied, the defendant is discharged, and may plead it, etc. In 1 Seld. 571, it is said there ought not to be two executions at the same time, but if one proves ineffectual another may be sued out. In the case before us the first execution did not prove ineffectual; a levy was made and returned, and the property had not been sold when the second execution issued.

In the case of Stoyel *v.* Cady, 4 Day, 222, a *ca. sa.* had been executed after the return day had passed.

The defendant, to procure his discharge, paid the money, and then brought an action against the sheriff and recovered a larger sum than the judgment. The plaintiff, in the original action, paid the money, and after his death his administrators brought a *scire facias* to set aside the proceedings, and obtained a new execution, on the ground that the *ca. sa.* had become a perfect nullity before it was served; that the judgment had been discharged by mistake, and that there had been no real satisfaction. The court sustained the writ, and the plaintiff had judgment. In that case the return day of the *ca. sa.* being past, it was dead in law before it. was served, and gave no authority to the officer; there had been a lapse of time; the parties were changed, and the plaintiff must have lost his debt without the relief sought for. In the case before the court there was a levy by Ridgeway, in the life of the 467] defendant, not disposed of. After *that levy, and the death of the defendant, a new execution issued against him to Holcomb, by virtue of which there was another levy, a sale, and a return of satisfaction.

It is contended by the defendants that these proceedings are.

not void, but only voidable. The distinction between void and voidable is not as distinctly defined as could be wished. It is said that those acts are void which are contrary to law at the very time of doing them, and no person is bound by such an act; but a thing is only voidable which is done by a person who ought not to have done it. 5 Bac., title Void and Voidable, A, pl. 1. By this rule all the proceedings subsequent to the death of the defendant were not only irregular but void. The execution directed to Holcomb was illegal at the time it was taken out: 1. Because there was a previous execution and levy, on which no sale had been made. 2. Because the defendant was dead before it was issued. 3. Because his property, in the hands of his representatives, could not be taken without a previous *scire facias*. Some of the cases cited by defendants' counsel, to show that these proceedings were merely voidable, are certainly strong; but the death of the defendant, and the change of the sheriff, are circumstances which did not occur in either of them, and are sufficient to show that they do not meet the case before us. Had the sale been made by the same officer who made the first levy, the second writ and levy might, perhaps, have been considered as mere nullities, and the sale referred to the first levy; but such was not the fact. · The sale was by a person who derived no power or authority from that levy, and if it be supported, it must be done on the efficacy of the last process and the proceedings had thereon. To justify this the first levy must be considered as disposed of by the writ of error; and should that be admitted, the death of the defendant having intervened, a *scire facias* was necessary, and the process should have been against the representatives, and not in the name of the deceased defendant, so that in either case the proceedings must be illegal.

As to the fourth point, the defendants' counsel urge several objections against proceeding by *scire facias*. They insist, from the definition of the writ given in 2 Saund. 70, that it is inapplicable to this case, but they seem to forget *that there is here a [468 satisfaction of record, which forms the chief difficulty of the plaintiff, and which he seeks to set aside.

The second objection, that a *scire facias* to revive a judgment was unknown at common law, and was given by a statute not in force in this state, as also the third objection, that no writ of *scire facias* can issue against the *terre tenants* until the heir has been

summoned in, nor against the heir, till the personal representa-tives have been called on, are predicated on a mistaken apprehen-sion of the object of the writ in the present case, which is to get rid of the illegal proceedings since the death of Sylvester Fuller, so as to proceed on the levy, legally made, in his lifetime. It is not to revive the judgment, or to lay a foundation for process against any of his representatives. If the land levied on, in the life of the defendant, be not sufficient to satisfy the judgment, the plaintiff must pursue the course pointed out by the statute before he can take out execution for the residue. The great object of this proceeding is to avoid the entry of satisfaction on the record, and the proceedings which have led to it, for the purpose of enabling the plaintiff to pursue his remedy, by commencing at the point where the proceedings stood at the death of the de-fendant.

This is the relief prayed for by the plaintiff, and we are all of opinion that he is entitled to it.

Demurrer overruled.