[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10417
_____

D.C. Docket No. 1:17-cv-04656-AT


W. A. GRIFFIN, MD,

Plaintiff - Appellant,

versus

COCA-COLA REFRESHMENTS USA, INC.,
UNITED HEALTHCARE INSURANCE COMPANY,

Defendants - Appellees,

UNITED HEALTHCARE OF GEORGIA, INC.,

Defendant.


_____

No. 18-10418
_____

D.C. Docket No.  1:17-cv-04657-AT


W. A. GRIFFIN, MD,

Plaintiff - Appellant,

versus

DELTA AIR LINES, INC.,
UNITED HEALTHCARE INSURANCE COMPANY,

Defendants - Appellees,

UNITED HEALTHCARE PLAN OF GEORGIA, INC.,

Defendant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(February 24, 2021)

Before BRANCH and MARCUS, Circuit Judges, and UNGARO,* District Judge.

BRANCH, Circuit Judge:

Dr. Wakitha Griffin, a dermatologist in Atlanta, Georgia, has filed many appeals in this Court in recent years, all of which have involved her attempts to receive in-network payments despite being an out-of-network provider. Our other opinions have been unpublished; we choose to publish today in hopes of resolving this recurring litigation.

_____

* The Honorable Ursula Ungaro, United States District Court for the Southern District of Florida, sitting by designation.

2

These consolidated appeals arise from Griffin's treatment of two patients who were insured under two separate employee welfare benefit plans which are administered by United Healthcare ("United"). The Employee Retirement Income Security Act of 1974 ("ERISA") covers both plans. Because Griffin does not have a contract with United whereby she provides services in exchange for reimbursement at a negotiated rate, she is an out-of-network provider under both plans. Generally, patients are reimbursed at lower rates when receiving healthcare services from out-of-network providers rather than in-network providers.

Eschewing a contractual relationship with United and payment from her patients, Griffin instead requested that the two patients assign their benefits under their plans to her. They obliged. Griffin then attempted to collect from United the same payment that she would have received had she been an in-network provider. When United only paid her the benefits she was entitled to as an out-of-network provider, Griffin brought two separate lawsuits—one against Coca-Cola Refreshments, Inc. ("Coca-Cola") and United and the other against Delta Air Lines, Inc. ("Delta") and United (collectively, "Defendants")—asserting various ERISA violations. The district court dismissed both cases for failure to state a claim because the plans' anti-assignment clauses prevented Griffin from obtaining statutory standing under ERISA to sue on behalf of her patients. Griffin appealed both cases to this Court.

These consolidated appeals raise an unsettled issue about whether an ERISA plan administrator or its claims agent may waive its right to rely on an anti-assignment provision in an ERISA-covered plan. We need not reach that issue, however. Even assuming that waiver is available in the ERISA context, Defendants did not waive their ability to assert the anti-assignment provisions as a defense. And regardless of waiver, Griffin's lawsuit still fails to state a claim: United paid her in full, both under the terms of the patients' assignments and the provisions of the healthcare plans. We therefore affirm the district court's orders.

## I.        Background

Although these consolidated appeals implicate two distinct health benefit plans, patients, and assignments, the facts giving rise to Griffin's claims in each case are largely the same. A few years ago, Griffin provided medical treatment for two patients: Patient J.J., who was insured under the Coca-Cola Plan, and Patient G.A., who was insured under the Delta Plan.[1] United is the Coca-Cola Plan's Claims Fiduciary and the Delta Plan's Claims Administrator. Under the terms of both plans, Griffin is an "out of network" physician. Generally, the plans reimburse the beneficiary at a higher percentage when he visits an in-network physician rather than an out-of-network physician. For example, the Coca-Cola

---

[1] The Coca-Cola Company Benefits Committee is the Coca-Cola Plan Administrator and the Administrative Committee of Delta Air Line, Inc. is the Delta Plan Administrator.

Plan provides that when a beneficiary has an office visit with an out-of-network physician, the plan pays 60 percent of the cost of service and the beneficiary pays 40 percent. By contrast, if the beneficiary has an office visit with an in-network physician, the plan pays at least 80 percent.

In exchange for medical treatment and in lieu of payment, the two patients executed an assignment of their plan benefits to Griffin. Both assignments are identical. By signing, the patient acknowledges that the document is "a direct legal assignment of my rights and benefits under this policy and designation of authorized representative" and "authorize[s] any plan administrator or fiduciary, insurer, and my attorney to release to such provider(s) any and all plan documents." The assignment further provides that the patient has assigned "all medical benefits and/or insurance reimbursement, if any, otherwise payable to [the patient] for services rendered from such provider(s), regardless of such provider's managed care network participation status."

Griffin believed that the assignments entitled her to full payment for her services, as if she were an in-network provider. She submitted claims to United, which she alleges United only partially paid. Griffin appealed United's payment determinations. In her appeals, Griffin made numerous requests, including: (1) that United disclose the plan's unambiguous anti-assignment provision, should the

5

plan have one; (2) copies of the plan documents; and (3) the identification of the Plan Administrator.

United denied each appeal and responded directly to the patients, copying Griffin on the communications. In each appeal denial, United explained that Griffin was not reimbursed the full amount of her charges because of the relevant plan's provisions regarding out-of-network coverage and deductibles. United therefore upheld the payment determinations and did not address Griffin's specific requests. Undeterred, Griffin submitted second level appeals for both claims and reiterated her requests. United again denied the appeals without addressing Griffin's requests.

After exhausting her administrative remedies, Griffin, proceeding *pro se*, filed two complaints in Georgia state court: one against United and Coca-Cola, for her treatment of Patient J.J., and the other against United and Delta, for her treatment of Patient G.A. The operative complaints are nearly identical and bring the same four claims: failure to pay plan benefits under 29 U.S.C. § 1132 (Count 1), breach of fiduciary duty under 29 U.S.C. § 1104 (Count 2), failure to provide plan documents under 29 U.S.C. §§ 1024(b), 1104, and 1132(2) (Count 3); and breach of co-fiduciary duties under 29 U.S.C. § 1105(a)(2) (Count 4). Defendants removed both lawsuits to the United States District Court for the Northern District of Georgia and moved to dismiss Griffin's complaints for failure to state a claim.

Griffin was in familiar territory in the district court. In the last four years, Griffin has filed more than two dozen cases either directly in the Northern District of Georgia or in state court that were later removed to that district court.[2] All involve Griffin seeking reimbursement from health plans through her patients' assignment of benefits.

---

[2] *See Griffin v. Blue Cross and Blue Shield Healthcare Plan of Ga., Inc., et al*, No. 1:14-cv-1610-AT (N.D. Ga. filed May 28, 2014); *Griffin v. S. Co. Servs., Inc.*, No. 1:15-cv-0115-AT (N.D. Ga. filed Jan. 14, 2015); *Griffin v. SunTrust Bank, Inc.*, No. 1:15-cv-0147-AT (N.D. Ga. filed Jan. 16, 2015); *Griffin v. FOCUS Brands Inc.*, No. 1:15-cv-0170-AT (N.D. Ga. filed Jan. 20, 2015); *Griffin v. Health Sys. Mgmt., Inc.*, No. 1:15-cv-0171-AT (N.D. Ga. filed Jan. 20, 2015); *Griffin v. Lockheed Martin Corp.*, No. 1:15-cv-0267-AT (N.D. Ga. filed Jan. 28, 2015); *Griffin v. Gen. Mills, Inc.*, No. 1:15-cv-0268-AT (N.D. Ga. filed Jan. 28, 2015); *Griffin v. Oldcastle, Inc.*, No. 1:15-cv-0269-AT (N.D. Ga. filed Jan 28, 2015); *Griffin v. Habitat for Humanity Int'l, Inc.*, No. 1:15-cv-0369-AT (N.D. Ga. filed Jan 28, 2015); *Griffin v. Verizon Commc'ns, Inc.*, No. 1:15-cv-0569-AT (N.D. Ga. filed Feb. 26, 2015); *Griffin v. Humana Employers Health Plan of Ga., Inc.*, No. 1:15-cv-3574-AT (N.D. Ga. filed Oct. 8, 2015); *Griffin v. Aetna Health Inc.*, *et al.*, No. 1:15-cv-3750-AT (N.D. Ga. filed Oct. 26, 2015); *Griffin v. Gen. Elec. Co.*, No. 1:15-cv-4439-AT (N.D. Ga. filed Dec. 22, 2015); *Griffin v. Navistar, Inc.*, No. 1:16-cv-0190-AT (N.D. Ga. filed Jan. 21, 2016); *Griffin v. Humana Employers Health Plan of Ga., Inc.*, No. 1:16-cv-0245-AT (N.D. Ga. filed Jan. 26, 2016); *Griffin v. Coca-Cola Enters., Inc.*, No. 1:16-cv-0389-AT (N.D. Ga. filed Feb. 9, 2016); *Griffin v. Sevatec, Inc.*, No. 1:16-cv-0390-AT (N.D. Ga. filed Feb. 9, 2016); *Griffin v. Cassidy Turley Com. Real Estate Servs.s, Inc.*, No. 1:16-cv-0496-AT (N.D. Ga. filed Feb. 17, 2016); *Griffin v. Americold Logistics, LLC*, No. 1:16-cv-0497-AT (N.D. Ga. filed Feb. 17, 2016); *Griffin v. Applied Indus. Techs., Inc.*, No. 1:16-cv-0552-AT (N.D. Ga. filed Feb. 23, 2016); *Griffin v. Areva, Inc.*, No. 1:16-cv-0553-AT (N.D. Ga. filed Feb. 23, 2016); *Griffin v. FOCUS Brands, Inc.*, No. 1:16-cv-0791-AT (N.D. Ga. filed Mar. 10, 2016); *Griffin v. Northside Hosp., Inc.*, No. 1:16-cv-1934-AT (N.D. Ga. filed June 10, 2016); *Griffin v. Crestline Hotels & Resorts, LLC*, No. 1:16-cv-2022-AT (N.D. Ga. filed June 16, 2016); *Griffin v. Verizon Commc'ns, Inc.*, No. 1:16-cv-2639 (N.D. Ga. filed July 20, 2016); *Griffin v. RightChoice Managed Care, Inc.*, *et al*, No. 1:16-cv-3102 (N.D. Ga. filed Aug. 23, 2016); *Griffin v. Aetna Health Inc.*, *et al*, No. 1:17-cv-00077 (N.D. Ga. filed Jan. 6, 2017); *Griffin v. United Healthcare of Ga., Inc.*, *et al*, No. 1:17-cv-4561-AT (N.D. Ga. filed Nov. 13, 2017); *Griffin v.Coca-Cola Refreshments USA, Inc.*, et al, No. 1:17-cv-4656-AT (N.D. Ga. filed Nov. 20, 2017). *Griffin v. Delta Air Lines, Inc.*, *et al*, No. 1:17-cv-4657-AT (N.D. Ga. Nov. 20, 2017).

Similar to her past claims, her allegations here focus on United's failure to disclose to her whether the plans had anti-assignment provisions, even though she requested them in her claim appeals. And because Defendants did not provide her the plan documents containing those provisions, Griffin's complaints allege that they cannot rely on them in defense of their lawsuit.

In their motions to dismiss Griffin's complaints, Defendants asserted that the plans' anti-assignment provisions rendered the assignment of benefits void. The plans each contain anti-assignment provisions. [3] The Coca-Cola Plan provides:

> 9.02 Assignment. If applicable, an Enrolled Person may authorize the Plan to directly pay the service provider or hospital that provided the Enrolled Person's covered care and treatment. Except as provided in the foregoing sentence, and subject to Section 9.06 of this Plan relating to Qualified Medical Child Support Orders, an Enrolled Person may not assign or alienate any payment with respect to any Benefit which an Enrolled Person is entitled to receive from the Plan, and further, except as may be prescribed by law, no Benefits shall be subject to attachment or garnishment of or for an Enrolled Person's debts or contracts, except for recovery of overpayments made on an Enrolled Person's behalf by this Plan.

Another section of the plan states, "While benefits payable at any time may be used to make direct payments to health care providers, no amount payable at any

---

[3] The Coca-Cola Plan has two operative plan documents: the Coca-Cola Company Health and Welfare Benefits Plan ("Wrap Document") and the Summary Plan Descriptions and Benefit Policies ("SPD"). The SPD is incorporated by reference into the Plan through the Wrap Document. We refer to them together as the "Coca-Cola Plan."

The Delta Plan also has two operative plan documents: the Account-Based Healthcare Plan ("Wrap Document") and the Summary Plan Descriptions and Benefit Policies ("SPD"). The SPD is incorporated by reference into the Plan through the Wrap Document. We refer to them together as the "Delta Plan."

time shall be subject in any matter to alienation by assignment of any kind.  Any attempt to assign any such amount shall be void."  The Coca-Cola Plan further provides that beneficiaries "may not assign any rights or cause of action that [they] may have against a third-party to recover medical expenses without the express written consent of the Plan Administrator."

Similarly, the Delta Plan provides:

13.07 Anti-Alienation of Benefits.  Except as required by law, no benefit, payment or distribution under the Plan shall be subject to the claim of any creditor of the Participant, or to any legal process by any creditor of the Participant, or to any legal process by any creditor of the Participant, and the participant shall not have any right to alienate, commute, anticipate or assign (either at law or in equity) all or any portion of any benefit, payment or distribution under the Plan except to the extent provided herein; provided, however, a Participant may make a voluntary and revocable assignment, but only for such purposes as the Administrative Committee may from time to time specify.

Another section of the plan states:

Except as required by law, no benefit, payment or distribution under the plans will be subject to the claim of any creditor of a participant, or to any legal process by any creditor of the participant, and the participant will not have any right to alienate, commute, anticipate or assign all or any portion of any benefit, payment or distribution under the plans.

However, a participant may make a voluntary and revocable assignment, but only for such purposes as the Plan Administrator may specify from time to time.

The district court dismissed both of Griffin's complaints for failure to state a claim.  Regarding her suit against Delta and United, the district court found the

9

Delta Plan's anti-assignment provisions barred all of Griffin's claims. In its order dismissing the suit against Coca-Cola and United, the district court similarly found the Coca-Cola Plan's anti-assignment provisions indisputably barred Griffin's claim for payment under the plan (Count 1). The court also found that, even if the language of the anti-assignment provisions did not bar the remaining non-payment claims (Counts 2, 3, and 4), the assignment itself did not include the right to bring those non-payment claims. Accordingly, she lacked derivative statutory standing to bring those claims as well. The district court did not address Griffin's waiver arguments. Griffin appealed the district court's orders to this Court.

Griffin presents three issues on appeal. First, did the patients legally assign Griffin the right to bring the breach of fiduciary duty and statutory penalties claims (the "non-payment-related claims") as well as benefit claims? Second, do the anti-assignment provisions apply to Griffin's claims for underpayment of benefits and/or the non-payment claims? Third, if they do apply to some or all of the claims, are Defendants estopped from relying on the anti-assignment provisions or have they otherwise waived the right to assert them?

We appointed Griffin counsel *sua sponte* and set this case for oral argument. After reviewing the record, the parties' briefs, and oral argument, we affirm the lower court's decisions.

## II.    Standard of Review and ERISA

10

The Court of Appeals reviews "*de novo* the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)).

ERISA, which governs this case, sets the minimum standards for employee benefit plans, such as the healthcare plans at issue here. *See* 29 U.S.C. §§ 1001, 1002. Section 502(a) of ERISA creates federal causes of action for recovery of benefits under such plans. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"). ERISA also allows participants to bring actions under section 502(a) against plan fiduciaries for breach of fiduciary duty. 29 U.S.C. § 1104. In addition, section 405(a) of ERISA imposes co-fiduciary liability on all plan fiduciaries in certain circumstances. *Id.*. § 1105. Finally, ERISA requires plan administrators, upon request, to provide plan information to participants and allows for participants to seek statutory penalties for a plan's failure to do so. *Id*. § 1132(c)(1). Critically, to maintain an action under ERISA, a plaintiff must have standing to sue under the statute. *Physicians*

11

*Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293–94 (11th Cir. 2004).[4]

In enacting ERISA, Congress broadly preempted state law relating to employee benefit plans. *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829 (1988); *see generally Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). Where ERISA is silent on an issue, Congress intended for courts to fashion a federal common law governing employee benefit plans. *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994). We have explained the process for determining federal common law under ERISA:

> To decide whether a particular rule should become part of ERISA's common law, courts must examine whether the rule, if adopted, would further ERISA's scheme and goals . . . ERISA has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans; and (2) uniformity in the administration of employee benefit plans.

*Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998). When tasked with shaping federal common law in the ERISA context, this Court has explicitly relied on rules found in the Restatement of Contracts, *see, e.g., Turner v. Am. Fed'n of Teachers Local 1565*, 138 F.3d 878, 882 (11th Cir. 1998),

---

[4] As used in this context, standing is not jurisdictional, Article III standing, but rather the right to make a claim under the statute. *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293–94 (11th Cir. 2004).

and state law, *see, e.g., Tippit v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1235 (11th Cir. 2006) (using Georgia law to interpret ambiguous plan).

### III.    Analysis

a.  The Scope of the Patients' Assignments

We first determine the scope of the patients' assignments to Griffin—whether they purport to give her the right to bring both payment and non-payment (breach of fiduciary duties and statutory penalties) claims.

To maintain an action under ERISA, a plaintiff must have statutory standing. ERISA limits the right to sue for plan participants, plan beneficiaries, plan fiduciaries, and the Secretary of Labor.  29 U.S.C. § 1132(a).  "Healthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA." *Physicians Multispecialty Grp.*, 371 F.3d at 1294.  Still, an assignee may obtain derivative standing for payment of medical benefits through a written assignment from a plan participant or beneficiary.  *See Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1339 (11th Cir. 2015).[5]

In this case, no party doubts that the assignments' language purports to convey to Griffin a right to bring the claim for unpaid benefits.  But Griffin argues that the patients assigned all their rights—including the right to bring fiduciary and

---

[5] For the reasons discussed herein, we need not decide whether the assignment of nonpayment claims provides derivative standing.

statutory penalty claims—under the plans because the assignments state: "This is a direct legal assignment of my rights and benefits under the policy." That sentence, Griffin claims, is enough to transfer the participant's right to bring claims both for unpaid payments and non-payment related claims.

In numerous unpublished decisions, we have rejected similar claims (all made by Griffin) regarding the assignment of the right to bring non-payment claims like those in Counts 2, 3, and 4. *See, e.g., Griffin v. SunTrust Bank Inc.*, 648 F. App'x 962, 967 (11th Cir. 2016) ("Nothing in an assignment of benefits transfers the patient's right to bring a cause of action" for similar non-payment-related claims.); *Griffin v. Health Sys. Mgmt. Inc*, 635 F. App'x 768, 772 n.4 (11th Cir. 2015). Griffin argues that these prior decisions only examine particular lines in the assignment, and we have not considered the exact language she points to in this appeal. Because the language Griffin relies on in this appeal assigns both "rights *and* benefits under the policy," Griffin claims, it expressly assigns the right to bring both payment and non-payment-related claims.

Even assuming this "rights and benefits" language evinces the assignment of two distinct rights—the right to bring claims for both payment and non-payment— the assignments themselves contradict Griffin's argument. The general form assignments on which Griffin relies contain 10 separately listed paragraphs outlining the scope of the assignments. The patients checked the box next to each

14

one.  None of the paragraphs mention breach of fiduciary duty or statutory penalty claims.  Rather, they provide the details of Griffin's "right" to receive the patients' "medical information" and "payment of benefits" under the Plan.  Therefore, the assignments make clear that the patients only assigned their right to bring claims for payment pursuant to 29 U.S.C. § 1132.  Accordingly, the district court was correct to dismiss Griffin's non-payment claims.

b.  The Plans' Anti-Assignment Provisions

    i.  *Applicability to Griffin's Payment Claim*

    We next turn to whether Griffin's payment claim survives the language of the plans' anti-assignment provisions.  We find that her payment claim does not.

    We have held that "an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable" against healthcare providers.  *Physicians Multispecialty Grp.*, 371 F.3d at 1296.  The anti-assignment language in the plans at issue is unambiguous and thus enforceable.  The Coca-Cola Plan says a participant "may not assign or alienate any payment with respect to any Benefit," and "no amount payable at any time shall be subject in any matter to alienation by assignment of any kind.  Any attempt to assign any such amount shall be void."  Similarly, the Delta Plan provides that "the participant shall not have any right to alienate, commute, anticipate or assign (either at law or in equity) all or any portion of any benefit, payment or distribution under the Plan."  And

15

another provision similarly states: "the participant will not have any right to alienate, commute, anticipate or assign all or any portion of any benefit, payment or distribution under the plans." On their face, these provisions restrict a patient's ability to assign his rights and therefore bar Griffin's claims.

In fact, Griffin "recognizes the weight of authority from this Court affirming the dismissals of several cases filed by Dr. Griffin based on the application of anti-assignment provisions to similar claims brought by Dr. Griffin under ERISA for unpaid benefits." But she urges this Court to reverse course and follow the Fifth Circuit's lead in its 1992 opinion in *Hermann Hospital v. MEBA Medical and Benefits Plan*, 959 F.2d 569 (5th Cir. 1992), *overruled in part on other grounds by Access Mediquip, L.L.C. v. United Healthcare Insurance Co.*, 698 F.3d 229, 230 (5th Cir. 2012) (en banc).

In *Hermann*, the Fifth Circuit held that the defendant plan's anti-assignment provisions were unenforceable against a healthcare provider. The patient in that case assigned "all rights, title and interest in the benefits payable for services rendered by the [healthcare provider]" to the provider-plaintiff. *Id.* at 571. The anti-assignment provision at issue stated:

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

16

*Id.* at 574.  The Fifth Circuit held that the anti-assignment clause did not, by its terms, void the assignment to the provider because it did not explicitly cover healthcare providers.  *Id.* at 575.  The court found it would be inequitable to prevent providers from recovering for the services they rendered unless the participants first sued the plan and the provider then sued the participants.  *Id.*  Thus, Griffin claims that this Court should find the Coca-Cola Plan's and Delta Plan's anti-assignment provisions do not bar the assignments because she received the assignment in her capacity as a healthcare provider.

But Griffin effectively asks this Court to invalidate an unambiguous contract provision which is valid and enforceable under our precedent based on the policy preferences of another circuit.  We cannot depart from our precedent.  *See Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir. May 1, 1981) ("It is the firm rule of this circuit that we cannot disregard the precedent set by a prior panel, even though we perceive error in the precedent.  Absent an intervening Supreme Court decision which changes the law, only the en banc court can make the change.").  Thus, if nothing else prevents Defendants from relying on the anti-assignment provisions in this litigation, the provisions bar Griffin's claims for unpaid benefits.

### ii.  *Void v. Voidable*

Before we turn to Griffin's remaining arguments as to why Defendants either waived or are estopped from relying on these anti-assignment provisions, we

17

must address an often-overlooked threshold issue: whether the anti-assignment provisions make the assignments void or voidable.[6]  If the assignments are void *ab initio* then there is no need to proceed to the equitable claims because each assignment is inherently null.  On the other hand, if the assignments are merely voidable, then they are effective unless and until they are challenged.  *See, e.g., Pitts ex rel. Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 356 (5th Cir. 1991) (discussing consequences of determining whether insurance policy was void rather than voidable).  Estoppel and waiver would only be available defenses to a voidable anti-assignment clause.

As discussed above, federal courts fill in the gaps Congress left in ERISA with federal common law.  *Glass*, 33 F.3d at 1347.  ERISA itself does not give an answer to the issue of void versus voidable.  Nor have the parties addressed it.  And federal courts have not discussed the distinction between void and voidable in the ERISA context.  Courts sometimes even use these concepts interchangeably.[7]

---

[6] Black's Law Dictionary defines "void" as "[o]f no legal effect; to null."  *Void*, *Black's Law Dictionary* (11th ed. 2019).  Something that is "void *ab initio*" is "[n]ull from the beginning, as from the first moment when a contract is entered into.  A contract is void *ab initio* if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one party to the contract."  *Id.*  The term "voidable" is defined as "[v]alid until annulled," that is, "capable of being affirmed or rejected at the option of one of the parties."  *Voidable*, *Black's Law Dictionary* (11th ed. 2019).

[7] "[C]ourts have lamented that '[t]he distinction between void and voidable is not as distinctly defined as could be wished.'  As a result, '[c]ourts have used the words "void," "voidable," "invalid," and "unenforceable" imprecisely' or even interchangeably."  Jesse A. Schaefer, *Beyond a Definition: Understanding the Nature of Void and Voidable Contracts*, 33 CAMPBELL L. REV. 193, 194 (2010) (quoting *Arnold v. Fuller's Heirs*, 1 Ohio 458, 467 (Ohio

18

Absent other guidance, we may look to the applicable state law to fill in ERISA's gaps. *Glass*, 33 F.3d at 1347. The Georgia Code renders as void: (1) contracts to do immoral or illegal things, (2) contracts against public policy, and (3) gambling contracts. O.C.G.A. §§ 13-8-1, 13-8-2, 13-8-3. This definition comports with our century-old precedent: in 1906, the former Fifth Circuit explained:

> The distinction between 'void' and 'voidable' in their application to contracts is sometimes one of practical importance. A transaction may be void as to one party, and not as to another. When entire technical accuracy is desired, the term 'void' can only be properly applied to those contracts that are of no effect whatsoever, . . . or in contravention of that which the law requires, and therefore incapable of confirmation or ratification.

*Haggart v. Wilczinski*, 143 F. 22, 27 (5th Cir. 1906). The assignments here are not illegal. Nor do they contravene public policy. *See Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) ("[N]either § 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights[.]"). And they have nothing to do with gambling. Accordingly, the assignments here are merely voidable rather than void *ab initio* and thus are enforceable unless and until Defendants raise the anti-assignment provisions. To put it another way, the

---

1824) and *Daugherty v. Kessler*, 286 A.2d 95, 97 (Md. 1972)). This confusion is noted in Black's Law Dictionary: "the word [void] is often used and construed as bearing the more liberal meaning of 'voidable.'" *Void*, *Black's Law Dictionary* (11th ed. 2019).

existence of those provisions did not automatically nullify the assignments, and thus equitable doctrines are available. Having said all that, we can turn to Griffin's waiver and estoppel arguments.

### c. Waiver

Griffin argues that Defendants waived their right to rely on the anti-assignment provisions because they did not alert her to their existence prior to litigation. We disagree.

"Waiver is the voluntary, intentional relinquishment of a known right." *Glass*, 33 F.3d at 1347; *see also Pitts*, 931 F.2d at 357; Appleman, Insurance Law and Practice, § 9251, at 488–89 (1981). Waiver can be express or implied from conduct. *In re Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982). "Where a party alleges an implied waiver, 'the acts, conduct, or circumstances relied upon to show waiver must make out a clear case'" of intentional relinquishment. *Witt v. Metro Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014) (quoting *In re Garfinkle,* 672 F.2d at 1347).

Because ERISA does not address waiver, courts have fashioned federal common law to address cases where a defendant relies on a contractual provision to defeat a claim. But various circuits have approached the problem differently. For example, the Fourth Circuit considers waiver to be a "prohibited concept" with respect to ERISA. *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239

(4th Cir. 2008).  Other circuits have reached the opposite conclusion.  *See, e.g.*

*Glista v. Unum Life Ins. Co. of America,* 378 F.3d 113, 132 (1st Cir. 2004)

(insurance company waived its right to raise a policy's clause for the first time in

litigation).  This circuit has "left open the question of whether waiver principles

might apply under the federal common law in the ERISA context," *Witt*, 772 F.3d

at 1279, and we do so again today because we need not decide it.

Even if the doctrine applies in the ERISA context, waiver would not be

available under the facts of this case.  None of the Defendants expressly

relinquished its right to assert the anti-assignment clauses in litigation.  And Griffin

does not allege any acts that would indicate they intentionally did so.  Boiled

down, Griffin alleges that defendants ignored her pre-litigation requests for plan

documents and any anti-assignment provisions, if they existed.  Evidence that an

insurance plan's claims administrator ignored a third party's pre-litigation request

for information about a contract with another party, without more, is insufficient to

show that the claims administrator or provider voluntarily or intentionally

abandoned a contractual defense to litigation.  Thus, even if waiver applied,

Griffin's allegations are insufficient to establish that the Defendants waived the

anti-assignment provisions.

d.    Estoppel

As an alternative to her waiver claim, Griffin argues that Defendants are equitably estopped from relying on the anti-assignment provisions because they did not respond to her pre-litigation inquiries as to whether the Coca-Cola Plan and the Delta Plan contained such provisions.

In the ERISA context, equitable estoppel applies when "the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of ambiguity." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). Equitable estoppel in the ERISA context is "very narrow." *Id.*

The anti-assignments provisions in the two plans at issue here are not ambiguous. Even if they were, Griffin does not submit any evidence, or even allege, that Coca-Cola, Delta, or United made *any* representation to Griffin that informally interpreted the provision. A straightforward application of the narrow ERISA estoppel doctrine compels this Court to find that Griffin cannot turn to it here.

Griffin asks this Court to rely on the Fifth Circuit's decision in *Hermann* and the Sixth Circuit's dicta in *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) to find that equitable estoppel's ambiguity requirement does not apply to Griffin. We are unpersuaded. In *Hermann*, the Fifth Circuit held that the

22

defendant was estopped from asserting that the anti-assignment clause applied because Hermann, the medical provider, "was not privy to" the plan documents and it was the defendant plan's "responsibility to notify Hermann" of the anti-assignment clause. 959 F.2d at 574. Similarly, in *Sprague*, the Sixth Circuit observed that the party asserting estoppel's reliance "can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of the plan documents *available to or furnished to the party*." 133 F.3d at 404 (emphasis added). But the facts of *Hermann* differ from the facts here. In that case, the payor repeatedly made false representations to the provider. *See Hermann*, 959 F.2d at 574. And in *Sprague*, the Sixth Circuit clarified that in order to assert an estoppel claim, "there must be conduct or language amounting to a representation of a material fact." 133 F.3d at 403. Here, none of the Defendants made any representations directly to the provider: they communicated with the beneficiaries and copied Griffin on the communications. And while United did not provide Griffin with the requested information, neither did it lie to her.

Further, Griffin's estoppel argument is foreclosed by our precedent. In the years following *Herman* and *Sprague*, this Court has never disregarded the ambiguity requirement. *See, e.g., Jones*, 370 F.3d at 1070 ("[W]hether proceeding on a breach of contract or equitable estoppel theory, an ERISA plaintiff can only succeed . . . if he can establish that the plan at issue is at least ambiguous with

23

respect to the relevant benefits for which he claims entitlement.").  And, in the past five years, we have addressed Griffin's estoppel argument in a series of unpublished decisions relating to similar claims based on similar facts.  Each time, we held that equitable estoppel does not apply.  *See Griffin v. United Healthcare of Ga., Inc.*, 754 F. App'x 793, 797 (11th Cir. 2018) ("[E]quitable estoppel cannot apply" where plan documents were not provided); *Griffin v. Coca-Cola Enters., Inc.*, 686 F. App'x 820, 822 (11th Cir. 2017) (same); *Griffin v. Habitat for Humanity Int'l, Inc.*, 641 F. App'x 927, 932 (11th Cir. 2016) (same); *Griffin v. Verizon Commc'ns, Inc.*, 641 F. App'x 869, 874 (11th Cir. 2016) (same); *Griffin v. S. Co. Servs.*, 635 F. App'x 789, 795 (11th Cir. 2015) (same); *Griffin v. Focus Brands, Inc.*, 635 F. App'x 796, 801 (11th Cir. 2015) (same); *Griffin v. Health Sys. Mgmt., Inc.*, 635 F. App'x 768, 773 (11th Cir. 2015) (same).  A decades-old case from another circuit does not disturb that conclusion.  Equitable estoppel does not prevent plan administrators or claims fiduciaries from relying on anti-assignment provisions simply because they did not alert the provider of such provisions.

In sum, although the assignments gave Griffin statutory standing pursuant to ERISA to bring claims for payment for the services she provided, the Defendants' anti-assignment provisions made the assignments voidable.  Even assuming waiver is available in the ERISA context, Defendants did not waive their ability to assert the anti-assignment provisions when Griffin filed claims against them.  Neither

24

does estoppel aid Griffin in avoiding the effect of the anti-assignment provisions. Therefore, the anti-assignment provisions deprived Griffin of her ability to bring these ERISA claims.

e.  Failure to State a Claim

We make a final observation about Griffin's claims before concluding. Assuming, *arguendo*, that Defendants' plans did not have enforceable anti-assignment provisions and Griffin had statutory standing to bring claims for payment pursuant to ERISA, Griffin would still fail to state a claim because she is not entitled to any more compensation than she already received.

Recall that each assignment at issue is "a direct legal assignment of [the patient's] rights and benefits under this policy and designation of authorized representative."  They also state:

> In considering the amount of medical expenses to be incurred, I, [the patient], have insurance and/or employee health care benefits coverage, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status.

Griffin's "managed care network participation status" is critical.  The patients visited an out-of-network provider—Griffin.  Had they paid Griffin out of pocket and filed a claim for reimbursement with United, United would have been obligated to reimburse the patients according to their policies for out of network

25

providers. That analysis does not change simply because the patient assigned the payments to Griffin.[8] Because the patients have no right to full reimbursement for the charged services, neither does Griffin. The assignment changes nothing. Either way, Griffin does not have a claim against Defendants.

We therefore **AFFIRM** the district court's orders.

---

[8] For example, Griffin charged Patient J.J. $129.96 for the office visit. Patient J.J.'s plan covered 60 percent of that charge. Therefore, United directly paid Griffin $77.98. United paid Griffin exactly what it would have paid the Patient J.J. if that patient had followed the process above.